WAPLES-PLATTER CO. v. LOW, (HANCOCK, Intervener.)

(Circuit Court of Appeals, Eighth Circuit. January 27, 1893.)

No. 139.

1. ASSIGNMENT FOR BENEFIT OF CREDITORS—FRAUD — RIGHTS OF CREDITORS—ATTACHMENT.

Plaintiff sued a merchant in the Indian Territory for a debt, (in which suit he subsequently had judgment,) and on the same day sued out an order of attachment, and placed it in the hands of the deputy marshal, whereby, under the statutes of Arkansas in force in the Indian Territory, (Mansf. Dig. § 325,) it became a lien on all defendant's property which had not then been assigned. On the same day the defendant made a general assignment, preferring certain creditors, and joined issue with the plaintiff on the allegations of the affidavit for attachment,—a mode of procedure allowed by the statutes of Arkansas. The assignee filed an interpleader, claiming the property under the assignment, and the two issues were tried together before a single jury. Held, that proof that defendant at the commencement of the action was about to sell or dispose of the property with the fraudulent intent to cheat, hinder, or delay his creditors was sufficient to justify a verdict against him. But to justify a verdict against the assignee plaintiff must also prove either that the order of attachment was delivered to the deputy marshal before the delivery and acceptance of the assignment, or that the assignee had knowledge of and took part in the defendant's fraud.

2. SAME—PRACTICE.

In such a case the better practice is to first and separately try to the court the issue between plaintiff and the assignor, arising under the attachment affidavit, and thereafter try the issue between plaintiff and the assignee. Sanger v. Flow, 48 Fed. Rep. 152, 1 C. C. A. 56, followed.

3. SAME—INSTRUCTIONS.

An instruction that the jury, before rendering a verdict for plaintiff, must find that the assignee was aware of or participated in defendant's fraud, was erroneous, in that such proof was not necessary to a verdict for plaintiff against the assignor only, nor even against the assignee, if the order of attachment was delivered to the marshal before the delivery and acceptance of the assignment; for in that event the assignee took the property subject to the lien of the attachment.

**4. Same—Evidence of Fraud.**

The preference by an assignor for the benefit of creditors of one creditor for $1,500, knowing that he owed such creditor but $500, with the intent to subsequently direct the application of the surplus $1,000 to the payment of another debt, not preferred, is conclusive evidence against the assignor of the fraudulent character of the assignment. Farwell v. Maxwell, 34 Fed. Rep. 727, distinguished.

**5. Same—Assignment and Attachment—Priority—Burden of Proof.**

The burden of proof was on the assignee to establish the delivery and acceptance of the assignment before the order of attachment came to the hands of the marshal; and, it appearing that the assignment was not acknowledged or filed until after that time; that the assignee was not in the town where it was drawn and signed on the day of its execution; and that the only delivery (which seems to have been before the assignment was acknowledged, and before the order of attachment was delivered) was to an attorney at law, whose power to bind the assignee by his receipt and acceptance of it is not established,—such evidence is not such conclusive proof of the priority of the assignment as to render the erroneous instructions immaterial.

**6. Attachment—When Authorized—Defrauding Creditors.**

Where, under Mansf. Dig. § 309, which provides, that a plaintiff may have an attachment when the defendant has sold, conveyed, or otherwise disposed of his property with the fraudulent intent to cheat, hinder, or delay his creditors, or is about to sell, convey, or otherwise dispose of it with such intent, the plaintiff alleges only that the defendant is about to sell or convey his property with such intent, an instruction that the plaintiff must prove that the defendant had, at the date of issuing the attachment, sold or disposed of his property with such fraudulent intent is erroneous, for proof that he was about to do so with such intent is sufficient.

In Error to the United States Court in the Indian Territory.

Action by the Waples-Platter Company against Charles H. Low to recover a sum of money. The action was commenced by an attachment, and one J. S. Hancock intervened, claiming the property as assignee of Low for the benefit of creditors. Issue was joined on the questions of the validity of the attachment, and its priority to the assignment, and the verdict and judgment were against the plaintiff and in favor of both the defendant and the assignee. Plaintiff brings error. Reversed.

Statement by SANBORN, Circuit Judge.

This is a writ of error to reverse a judgment against the plaintiff in error in favor of the defendant, Low, upon the issue tendered by an affidavit for attachment made by the plaintiff, and in favor of the interpleader, Hancock, upon the issue tendered by his interplea in the attachment suit. The defendant, Low, was a merchant in the Indian Territory, and the plaintiff was his creditor. On January 12, 1891, the plaintiff brought suit to recover his claim, and subsequently had judgment against the defendant for its amount. On the same day that he brought this suit he sued out an order of attachment, and placed it in the hands of the deputy marshal at 12:20 P. M., so that it then became a lien for the amount of plaintiff's claim on all the property of the defendant, Low, here in question that had not at that time been assigned to the intervener. Mansf. Dig. § 325; 26 St. at Large, p. 95. On the same day the defendant, Low, made a general assignment to the interpleader, which preferred certain of his creditors. Whether the assignment was delivered to and accepted by the interpleader before or after the order of attachment was delivered to the marshal was one of the disputed questions submitted to the jury. The statutes of Arkansas, in force in the Indian Territory, permit the defendant to contest the rightfulness of the attachment by controverting upon oath the allegations of the affidavit therefor, and allow any third

person claiming the property attached to file an interplea in the attachment proceeding setting forth his claim to the property, and to have it there determined. The defendant accordingly joined issue with the plaintiff on the allegations of the affidavit for attachment, and the interpleader, Hancock, filed his interplea, claiming the property under the assignment, and the two issues thus formed were tried together before a single jury, who returned a verdict against the plaintiff on both. The errors assigned relate chiefly to the charge of the court to the jury, and are stated and considered in the opinion.

A. G. Moseley, for plaintiff in error.

L. P. Sandels, (J. M. Hill, on the brief,) for defendants in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, (after stating the facts.) There were three questions that under some phases of this case it might be necessary for the jury to determine in this action. They were: (1) Was the defendant, Low, about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors at the commencement of the action? (2) Was the order of attachment delivered to the deputy marshal before or after the assignment to the interpleader was delivered and accepted? (3) Did the interpleader have any knowledge of or part in the defendant's scheme to cheat, hinder, or delay, his creditors (if he had any such scheme) before he accepted the assignment? If the jury answered the first question in the affirmative, the plaintiff would be entitled to a verdict against the defendant, regardless of either of the others; but an affirmative answer to this question would not authorize a verdict or judgment against the interpleader unless an affirmative answer was also given to one of the two other questions presented. In other words, to warrant a verdict against the interpleader, the jury must have found not only that the defendant was about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors when the action was commenced, but they must also have found, either that the order of attachment was delivered to the marshal before the delivery and acceptance of the assignment had been completed, or that the interpleader before or at the time of his acceptance of it participated in or was aware of the intended fraud.

Thus it will be seen that the issues between the plaintiff and defendant and those between the plaintiff and the interpleader were not identical, and to prevent confusion and error it was imperatively necessary that the court should keep the broad distinction between them clearly in mind, and should carefully and distinctly present it to the jury in its charge. The practice of trying these issues together and to the same jury is deprecated. The better practice is to first and separately try to the court the issue between the plaintiff and defendant arising under the attachment affidavit. Sanger v. Flow, 1 C. C. A. 56, 61, 48 Fed. Rep. 152; Holliday v. Cohen, 34 Ark. 707, 716. The difficulty, confusion, and error that are liable to result from a trial of both issues together to the same jury are well illustrated in this case.

Three of the instructions given to the jury, and here assigned as error, were as follows:

"Third. If the jury believe from the evidence that the plaintiff's attachment was levied upon the property assigned before the execution and delivery of the deed of assignment to either the assignee or his agent, and before the acceptance thereof by the assignee or his agent, and if you shall also believe from the evidence that the defendant, Low, had at the date of the issuing of such attachment sold, conveyed, or otherwise disposed of his property, or was about to sell, convey, or otherwise dispose of his property, with the fraudulent intent to cheat, hinder, and delay his creditors, then you will find for the plaintiff."

"Fifth. The court instructs the jury that before you can find the issues for the plaintiff as to the property attached, which is claimed by the interpleader, Hancock, the plaintiff must have established by the greater weight of the testimony not only that the defendant, C. H. Low, made the deed of assignment with the fraudulent intent to cheat, hinder, and delay his creditors, but that the assignee, J. S. Hancock, knew of said fraud, or that he participated therein.

"Sixth. The court instructs the jury that, although they may believe from the evidence that C. H. Low was indebted to Colbert La Flore in the sum of five hundred dollars only, and that he intentionally preferred said Colbert La Flore for the sum of one thousand dollars in excess thereof, with the fraudulent intent to appropriate the same to his own use, yet, unless the jury shall also believe from the evidence that the assignee or the preferred creditors knew of said Low's fraudulent intention, or participated therein, then you should find for the interpleader, Hancock."

The third instruction we will not stop to criticise, but the fifth and sixth clearly contradict it, and are obviously erroneous. They are too broad. It is true that, if the jury found that the order of attachment was not delivered to the marshal until after the assignment was delivered to and accepted by the interpleader, they must, in that event, have found that the interpleader knew of or participated in the defendant's fraudulent scheme before they could find for the plaintiff upon the issue between him and the interpleader. Emerson v. Senter, 118 U. S. 3, 6 Sup. Ct. Rep. 981; Baer v. Rooks, 50 Fed. Rep. 898. But no such finding was required to warrant them in returning a verdict for the plaintiff against the defendant. The only issue there was whether or not the defendant was at the commencement of the action about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors. The fact that the defendant in his assignment preferred Colbert La Flore for $1,500, when he knew he owed him but $500, with the intent to subsequently direct the application of the surplus $1,000 to the payment of another debt, not preferred by the assignment, was conclusive evidence against Low of the fraudulent character of this assignment. It may be admitted that, where an assignor by mistake or through ignorance or uncertainty as to his liability erroneously but in good faith states the amount of his liability to some creditor too high, the assignment may yet be sustained, (Farwell v. Maxwell, 34 Fed. Rep. 727;) though it will be noticed that the assignment in the case just cited was not one giving preferences, and stands upon very different ground from a preferential assignment like that in the case at bar, where the assignee is required by statute to give a bond conditioned that he will "sell the property to the best ad-

vantage, and pay the proceeds thereof to the creditors mentioned in said assignment according to the terms thereof." Mansf. Dig. § 305; Rice v. Frayser, 24 Fed. Rep. 460, 464. In this case, however, the defendant admitted on the trial that he knew he owed Colbert La Flore but $500 when he preferred him in his assignment for $1,500, and his only excuse was that he secretly intended thereby to secure the payment not only of the $500 he owed Colbert La Flore, but also of $1,000 that he owed to one William La Flore, who was in no way connected in business with Colbert. If upon such a state of facts such a preference is a lawful exercise of the power of the assignor, no reason is perceived why a preferential assignment securing a single creditor to whom the defendant owes but a dollar for an amount equal to the entire value of his assets might not be sustained upon the testimony of the assignor, subsequently given, declaring to what creditors, and to what amounts, he intended to apply the proceeds of his property.

The effect of this state of facts upon the assignee will not now be considered, because this case must be retried, and a different state of facts may then be presented. It is sufficient to say that the assignment is not void on its face, since its vice does not there appear, and hence the assignee may have received and accepted it in good faith without notice of the intended fraud of the assignor; but, so far as the assignor is concerned, when he knowingly prefers a creditor in his assignment for an amount far in excess of the debt he actually owes him, for the express purpose of creating a secret trust in the surplus above his debt, to the end that he may subsequently dispose of it according to his own secret intention, which he may change at any moment, he thereby presents conclusive evidence of his fraudulent intent in making the assignment upon every principle applicable to such instruments. Nothing is better settled than that the assignment in this class of cases, where preferences are permitted, as at common law and by the statutes of Arkansas, must definitely fix the rights of the parties beneficially interested, and that nothing shall be left to the discretion or further control of the assignor. Thus in Haydock v. Coope, 53 N. Y. 68, where a debtor made a preferential assignment, and his son at the same time borrowed of a class of the preferred creditors a large portion of the amount secured to them on a credit of five years, the court treated the son's control of the proceeds of the property as that of the father, and held the assignment void, because it practically left so large a portion of the proceeds under the debtor's control, and declared that—

"To hold that a debtor may exercise his right of giving preferences among his creditors so as to secure to himself the future control of the property assigned, or its proceeds, would give facilities for the grossest frauds, and utterly defeat the ends for which assignments have been sustained, which are the application of the property to the payment of their debts."

In Averill v. Loucks, 6 Barb. 470, where a preferential assignment provided that the debts should be paid in the order provided in schedules to be filed within 60 days after its date, Judge Paige declared it void, because it did not fix definitely the rights of the par-

ties, but reserved to the assignor the control over the proceeds of his property. To the same effect are Pierson v. Manning, 2 Mich. 444, 450; Grover v. Wakeman, 11 Wend. 187; Lukins v. Aird, 6 Wall. 78; Mackie v. Cairns, 5 Cow. 547, 580; Seaving v. Brinkerhoff, 5 Johns. Ch. 329, 333; Barney v. Griffin, 2 N. Y. 365, 371; Gazzam v. Poyntz, 4 Ala. 374, 380; Wiswall v. Ticknor, 6 Ala. 179, 185. To give judicial sanction to an assignment making such a preference as this in question would enable assignors to force compromises with their unpreferred creditors by presenting exaggerated statements of their preferred liabilities, would permit the creation and execution of secret trusts, and would enable the assignors to control at will the proceeds of their property after assignments had been made; and these are the very vices in assignments against which courts have constantly guarded, and must continue to guard, the public. It is plain, therefore, that, so far as the issue between plaintiff and defendant was concerned, there was error in the fifth instruction, which charged the jury that, before they could render a verdict for the plaintiff, they must find that the interpleader was aware of or participated in the defendant's fraud. No such finding was required to warrant a verdict upon that issue.

Not only this, but no such finding was requisite to warrant a verdict even against the interpleader in the event that the jury found that the order of attachment was delivered to the marshal before the assignment was delivered and accepted, and that question was submitted to them to determine. In that event the attachment became a first lien upon the property, and any assignee taking the property of the debtor under a subsequent assignment took no more than the debtor had, and that was the property subject to this lien. The assignee's guilt or innocence, knowledge or ignorance of the debtor's fraudulent acts or purposes could not give him more. Bergman v. Sells, 39 Ark. 100. These views of the issues tried were fairly presented by the evidence, and were vital to the support of the plaintiff's contention. He was entitled to have the law applicable to them fairly presented to the jury, while by these instructions it was entirely withdrawn from them.

It is insisted by counsel for defendants in error that the evidence was conclusive that the assignment was delivered and accepted before the order of attachment was placed in the hands of the marshal, and hence that these instructions worked no prejudice to the plaintiff and constitute no reversible error. The burden of proof was on the interpleader to establish the delivery and acceptance of the assignment before the order of attachment came to the hands of the marshal. The evidence found in the bill of exceptions is far from furnishing conclusive proof of this fact. Indeed, it appears from it that the assignment was not acknowledged or filed until after that time; that the assignee was not in the town where it was drawn and signed on the day of its execution; that the only delivery (which appears to have been before the assignment was acknowledged, and before the order of attachment was delivered) was to an attorney at law, whose power to bind the assignee by his receipt and acceptance of it is established by no proof. These circumstances were

certainly competent, and somewhat persuasive, evidence that there was no competent delivery and acceptance of the assignment until after the attachment was in the hands of the marshal.

The giving of the following instruction to the jury is another error assigned:

"Second. The court instructs the jury that the burden of proof in this case is on the plaintiff, and, in order that he recover, he must have established by the greater weight of the testimony that the defendant, C. H. Low, had, at the date of the issuing of the plaintiff's attachment herein, sold, conveyed, or otherwise disposed of his property with the fraudulent intent to cheat, hinder, and delay his creditors."

Section 309 of Mansfield's Digest, under which the order of attachment was issued, provides that the plaintiff may have an attachment in an action for the recovery of money in certain cases,—two of which are where the defendant—

"(7) Has sold, conveyed, or otherwise disposed of his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, or delay his creditors; or (8) is about to sell, convey, or otherwise dispose of his property with such intent."

The affidavit for attachment alleged that—

"Said defendant, Charles H. Low, is about to sell, convey, or otherwise dispose of his property, or suffer or permit it to be sold, with the fraudulent intent to cheat, hinder, or delay his creditors."

The second instruction was erroneous for two reasons: First. The plaintiff had not alleged, and consequently was not required to prove, that the defendant *had* sold, conveyed, or otherwise disposed of his property with the fraudulent intent at the time of the commencement of the action. His ground of attachment was that he was then *about* to sell, convey, or otherwise dispose of it with such intent. Second. The fraudulent intent the statute requires the plaintiff to establish is to cheat, hinder, *or* delay his creditors, while the instruction imposed upon him the burden of proving an intent to cheat, hinder, *and* delay his creditors.

There are other assignments of error, but it is unnecessary to notice them. The result is that, upon the trial of an issue between the plaintiff and defendant, raised by the denial by the latter of the plaintiff's allegation in his affidavit for attachment that the defendant was at the commencement of the action about to sell, convey, or otherwise dispose of his property with the fraudulent intent to cheat, hinder, or delay his creditors, the knowledge or participation of an assignee of the defendant for the benefit of his creditors in his fraud is not material. An assignment whereby an insolvent assignor knowingly prefers a creditor for an amount in excess of his indebtedness to him with the secret intent to cause the surplus above his actual indebtedness to such creditor to be subsequently applied to the payment of a debt he owes to another creditor, who is not secured by the assignment, is conclusive evidence of the assignor's intent thereby to cheat, hinder, or delay his unsecured creditors; and where the lien of an attaching creditor becomes fixed upon the property of the debtor before the delivery and acceptance of an assignment preferring creditors, made by him with the fraudu-

lent intent to cheat, hinder, or delay his creditors, in the trial of the assignee's right to the property under the assignment as against the lien of the attaching creditor, it is not material whether the assignee was aware of or participated in the debtor's fraud. In the charge of the court these rules were disregarded, and the judgment below is reversed, with costs, and with instructions to grant a new trial.