ARCHER DRUG COMPANY *v.* KIMPEL.

4-6235                                          150 S. W. 2d 605

Opinion delivered March 10, 1941.

*Murphy & Murphy* and *Rose, Loughborough, Dobyns & House,* for appellant.

*Golden, Golden & Gibson,* for appellee.

GRIFFIN SMITH, C. J.   When the litigation that resulted in this appeal originated in March, 1940, E. B. Kimpel operated the Cash and Carry drug store in Dermott.   His wife, M. E. Kimpel, operated the Kimpel drug store.   In July, 1939, unpaid bills for merchandise supplied by appellant to the Kimpel store amounted to $846.83.   A promissory note, payable to Archer Drug Company, on demand, was executed by E. B. and M. E. Kimpel.   Suit to enforce collection was brought March

13, 1940. Two days later an attachment was levied upon goods then remaining in the Kimpel store.[1]

E. B. Kimpel, as trustee of the estate of B. A. Kimpel, intervened.[2]

Prayer of the intervention was granted March 27. The stock of goods was moved March 29. An inventory of the Kimpel store taken March 11 by appellees showed stock valuation of $2,733.08. Appellant's representative took an inventory March 15 and fixed values at $2,040.35. At the same time, another inventory taken for appellees showed stock of $2,475.

According to E. B. Kimpel's testimony, he purchased the Kimpel drug store for his wife in 1930. Its actual operation was by Kimpel's brother-in-law, Murray Shafsky.

Total indebtedness of Kimpel and his wife incidental to the drug stores was $7,000, inclusive of the amount due appellant. A $4,000 loan on property owned by the B. A. Kimpel estate was procured from Dermott State Bank. With from $1,500 to $1,600 of this fund appellees composed their obligations with creditors at 25 per cent., with the exception of "forty some odd dollars" and $68 in goods returned. No part of the Archer Drug Company note was paid. E. B. Kimpel testified that his mother was living when the $4,000 loan was made; that his wife borrowed the money from his mother, and had paid it back.[3]

The Cash and Carry drug store's bank account was in the name of Murray Shafsky. The Kimpel drug store

---

[1] Grounds of attachment alleged were that the Kimpels had sold, conveyed, or otherwise disposed of their property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, or delay their creditors. Also, that the defendants were about to sell, convey, or otherwise dispose of their property with such fraudulent intent.

[2] The intervention alleged that the attached goods were in a building owned by the B. A. Kimpel estate; that the building had recently been sold to L. L. Jones, of McGehee, and that in order to effectuate the sale the personal property should be moved to another location.

[3] Kimpel testified that he opened the Cash and Carry store "about the 20th of June or July—I think the 20th of June." The reference must have been to 1939.

had its own bank account. Checks were signed by Murray Shafsky or W. B. Perry.[4]

On cross-examination of E. B. Kimpel there is the following:

"Q. You told us a while ago that merchandise was taken from the Kimpel drug store over to the Cash and Carry? A. Yes, sir. Q. How much; rather, how long did that continue? A. When Mr. Perry would run out of something or get a call for something he did not have. But, naturally, it was properly charged. Q. Do you know how much stock was put in there from the Kimpel drug store? A. I think about $800 worth."

The court erred in dissolving the attachment. Section 531 of Pope's Digest gives the plaintiff in a civil action the right to attach where the defendant has sold, conveyed or otherwise disposed of his property, or suffered or permitted it to be sold, with the fraudulent intent to cheat, hinder, or delay creditors; or where the defendant is about to sell, convey, or otherwise dispose of his or her property with fraudulent intent in respect of creditors.

E. B. Kimpel's testimony sustains the conclusion that he intended his creditors should believe him insolvent. He will not now be heard to say that possession of certain lots, an automobile, and an interest in his mother's estate (which he testified had been absorbed by his sisters) can change the status. Indeed, we do not understand that it is contended he was not insolvent.

It must also be assumed that in taking merchandise from the Kimpel store and placing it in the Cash store, and in depositing sales receipts in the name of a third party—Shafsky—the natural consequences of such transactions were intended.[5] Nor may goods be converted

---

[4] Perry (at time of trial a rural mail carrier) had been employed by the Kimpel drug store "as a druggist" for nine or ten years.

In explaining who was meant by "we," E. P. Kimpel testified: "To be frank, my wife and I. What's hers is mine and what's mine is hers."

[5] *Metcalf* v. *Jelks*, 177 Ark. 1023, 8 S. W. 2d 462. See, also, *Farris* v. *Gross*, 75 Ark. 391, 87 S. W. 633, 5 Ann. Cas. 616; *Arkansas National Bank* v. *Stuckey*, 121 Ark. 302, 181 S. W. 913; *Federal Land Bank* v. *Wright*, 175 Ark. 401, 299 S. W. 384.

into money in the regular course of business by an insolvent debtor for the fraudulent purpose of defeating creditors.

There is no substantial evidence tending to prove consent by appellant's agent that the goods be moved. The attempt to make this showing reflects merely an incident in negotiations whereby appellant displayed toleration without engaging in conduct the legal effect of which would have been to acquiesce in a transaction with knowledge of its extent and purpose.

The judgment is reversed, with directions to sustain the attachment.